# Exhibit A

Donald Cloyce Wagda (Cal. Bar No. 257254)
547 Blackhawk Club Drive
Danville, California  94506
Telephone: (650) 644-7151
Facsimile: (925) 307-5498
donald@WagdaLaw.com

*Attorney to Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN STRICKLAND,<br><br>Plaintiff,<br><br>vs.<br><br>URBAN ALCHEMY, a California Nonprofit Public Benefit Corporation;<br><br>HUNTERS POINT FAMILY, a California Nonprofit Public Benefit Corporation;<br><br>CITY AND COUNTY OF SAN FRANCISCO;<br><br>and<br><br>DOES 1-10, jointly and severally,<br><br>Defendants. | Case No. 3:21-CV-08718 AGT<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF CIVIL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1.  Violation of First Amendment Rights (42 U.S.C. § 1983)<br>2.  Violation of Fourteenth Amendment Rights (42 U.S.C. § 1983)<br>3.  Violation of Civil Rights – *Monell* (42 U.S.C. § 1983) |

Plaintiff Shawn Strickland ("Ms. Strickland" or "Plaintiff") brings this civil rights action seeking injunctive relief and damages under the laws of the United States and alleges on knowledge as to herself and her own acts, and on information and belief as to all other matters, as follows:

//

//

//

1

**INTRODUCTION**

1.      Since at least 2019, the City and County of San Francisco, through its private nonprofit contractors (and/or subcontractors) Urban Alchemy and/or Hunters Point Family, has deployed hundreds of inadequately-trained, reformed long-term felons in public spaces to assume certain government functions traditionally performed by professionally-trained law enforcement personnel, resulting in a widespread practice of arbitrary "move-along" orders being issued without lawful basis to marginalized members of the public.

2.      On April 23, 2019, Plaintiff Shawn Strickland, also known as "The Supergirl of San Francisco," was sitting and praying silently in the middle of United Nations Plaza, a wide open outdoor public park and public forum in San Francisco, California.  The precise location where she was praying was, according to her then-expressed belief, a "spiritual nexus."  A group of employees of Defendant Urban Alchemy and/or Hunters Point Family who were patrolling the vicinity approached her and demanded that she remove herself from her sacred place of prayer.  When she refused, they contacted the San Francisco Police Department ("SFPD"), which sent two bicycle-mounted police officers to the scene. Without lawful basis, one police officer verbally accused Ms. Strickland of trespassing in the open public park and ordered her to leave, while the other police officer stood by silently, failing to challenge the order.  Through their conduct described herein, the City and County of San Francisco, Urban Alchemy, Hunters Point Family and the police officers violated Ms. Strickland's First Amendment rights to freedom of speech and freedom of religion, and her Fourteenth Amendment right to loiter in public places for innocent purposes, entitling her to damages and injunctive relief as set forth herein.

**JURISDICTION**

3.      This Court has jurisdiction over this action.

4.      This Court is the proper court because the events and injury to person giving rise to Plaintiff's claims occurred within its jurisdictional area.

5.     This action is timely filed within all applicable statutes of limitation, including as tolled by Emergency Rule 9 (promulgated by the Judicial Council of California in response to disruptions caused by the COVID-19 pandemic) and California's relation-back rules regarding misnomered and/or Doe defendants.  *See Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1201 (9th Cir. 2014) (holding that in a Section 1983 case, California's more permissive statute of limitation rules govern).  As of the time of filing of the original Complaint and subsequent First Amended Complaint, Plaintiff was genuinely ignorant of the identity of Defendant Hunters Point Family in connection with any of the allegations set forth therein.

## PARTIES

6.     Plaintiff Shawn Strickland is, and at all times herein mentioned was, a citizen of the United States and a resident of the City and County of San Francisco.

7.     Defendant City and County of San Francisco ("City") is, and at all times mentioned herein was, a political subdivision of the State of California, duly organized and existing under the laws of the State of California.

8.     Defendants Urban Alchemy and/or Hunters Point Family are, and/or at all times mentioned herein were, California Nonprofit Public Benefit Corporations, agents, contractors and/or subcontractors of Defendant City, and employers of three non-Defendant employees who were integral participants in the conduct complained of herein ("Employee 1," "Employee 2" and "Employee 3"; collectively, the "Employees").  Defendant Urban Alchemy is, and at all times relevant hereto was, an agent, contractor and/or subcontractor of Defendant Hunters Point Family.  By engaging in the conduct described herein, the Employees acted under color of law and in the course and scope of their employment and agency for Defendant City and Defendants Urban Alchemy and/or Hunters Point Family.  By engaging in the conduct described herein, the Employees exceeded the authority lawfully vested in them as law enforcement agents under the United States Constitution and as law enforcement agents of Defendant City and Defendants Urban Alchemy and/or Hunters Point Family.

9.     At all times mentioned herein, Defendants John Doe 1 and John Doe 2 were employed as bicycle-mounted law enforcement officers of the San Francisco Police Department and Defendant City.

3

Defendants John Doe 1 and John Doe 2 are sued individually, and in their capacities as law enforcement officers for the San Francisco Police Department and Defendant City.  By engaging in the conduct described herein, Defendants John Doe 1 and John Doe 2 acted under color of law and in the course and scope of their employment for Defendant City.  By engaging in the conduct described herein, Defendants John Doe 1 and John Doe 2 exceeded the authority vested in him as a law enforcement officers under the United States Constitution and as a law enforcement employees of Defendant City.

10.     Plaintiff is ignorant of the true names and capacities (except as set forth herein) of Defendants Does 1 to 10, inclusive, and therefore sues those Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Doe Defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiff as set forth herein. Plaintiff will amend this Complaint to state the true names and capacities of Defendants Does 1 through 10, inclusive, when they have been ascertained.

11.     At all times relevant to this Complaint, Defendants and Employees, and each of them, were acting as the agents, employees, and/or representatives of each other, and were acting within the course and scope of their agency and employment with the full knowledge, consent, permission, authorization, and ratification, either express or implied, of each of the other Defendants and Employees in performing the acts alleged in this Complaint.

12.     Each Defendant and Employee acted both individually and in alignment with the other Defendants and Employees with full knowledge of their respective wrongful conduct. As such, Defendants and Employees conspired together, building upon each other's wrongdoing, in order to accomplish the acts outlined in this Complaint.  As members of the conspiracies alleged herein, each of the Defendants and Employees participated and acted with or in furtherance of said conspiracy, or aided or assisted in carrying out the purposes of the conspiracy, and have performed acts and made statements in furtherance of the conspiracy.

13.     Defendants are individually sued as principals, participants, aiders and abettors, and co-conspirators in the wrongful conduct complained of and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions complained

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATION OF CIVIL RIGHTS

of herein.

14.     All actions described in this Complaint on the part of City, Urban Alchemy, Hunters Point Family and Does 1-10 constitute state action.  Urban Alchemy and/or Hunters Point Family are, and at all times relevant hereto were, engaged in a traditional public function and operating in a position of interdependence with the government, in such close nexus that their conduct may be fairly treated as of the government itself.  At all times relevant hereto, Urban Alchemy and/or Hunters Point Family (1) have operated, and/or are operating, foot patrols in public spaces for law enforcement purposes (including issuing "move along" orders, asking members of the public to cease and desist certain conduct, threatening the public with law enforcement intervention, reporting perceived misconduct, *etc*.), (2) have worked, and/or are working, in close concert with the San Francisco Police Department including as described herein (*e.g*., summoning police assistance when members of the public do not cooperate with their demands, and assisting the police summoned under such circumstances), (3) have otherwise interacted, and/or are interacting, with the public in ways traditionally performed exclusively by law enforcement officers, and/or (4) have entered into and performed upon, and/or are performing upon, one or more contracts in furtherance of the foregoing actions.

## FACTUAL ALLEGATIONS

15.     Shawn Strickland is a disabled, two-spirit, intersex, lesbian, transgender woman whose Christian spirituality is supplemented by Pagan rituals and beliefs.  Known locally as "The Supergirl of San Francisco," she has been the subject of media coverage in the San Francisco Chronicle, SFGate.com, Bay Area Reporter, San Francisco Patch, Northern California Record, KQED, KBCW-TV, and on the nationally televised HBO comedy show Last Week Tonight with John Oliver.  Originally from a small town in rural Texas, she once attended Texas A&M University.  She came to San Francisco seeking ideological shelter from the pervasive transphobia of her home state.  She found a city so expensive that, despite her monthly disability income, she could not afford housing.  At the time of the incident

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATION OF CIVIL RIGHTS

complained of herein, she was homeless.[1]  Adding insult to injury, her rights and dignity have continued

to be violated right here in her city of refuge, San Francisco, including in the incident complained of

herein.

16.     On April 23, 2019, between 6:00 p.m. and 7:00 p.m., Ms. Strickland sat in the middle of

United Nations Plaza (the "Plaza"), in a place she considers to be a spiritual nexus.

17.     Ms. Strickland was (and is) patently female-identified in appearance and wearing her

usual daily dress, a superhero-style costume.

18.     While seated in the middle of the Plaza, Ms. Strickland proceeded to pray, and while she

was praying, Employee 1 approached her and demanded that she remove herself to another location, or

else he would call the police on her.

19.     San Francisco's "Promotion of Civil Sidewalks" ordinance, Section 168 of the San

Francisco Police Code (the "Sit/Lie Law"), by its terms, applies "only to public sidewalks" and not to

"plazas, public parks... and other common areas open to the public" such as the Plaza.  *See* S.F. Police

Code Section 168(a).

20.     Ms. Strickland activated her smartphone's video recording function.  In a recorded

conversation, Employee 1 said, "[w]e're going to show [the police] that video tape of you feeding the

birds.  Against the law.  I hope they lock you up.  If you want to be an asshole, we're going to be an

asshole with you."  Ms. Strickland replied, "the birds are God's creatures."

21.     Ms. Strickland had been feeding birds in the Plaza earlier that day, but ceased that conduct

approximately one full hour prior to the recorded conversation.  At the time she was feeding the birds,

neither the Employees (who were present in the Plaza) nor any other law enforcement official expressed

any objection to her conduct.

---

[1] As of the date hereof, Plaintiff lives in an apartment in San Francisco and is no longer homeless, but lives near and spends much of her time within areas patrolled by personnel of Defendant Urban Alchemy.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATION OF CIVIL RIGHTS

22.    Employee 1 continued, "[a]ll we ask you to do is go pray on the outside and not in the middle of the center of the Civic Center."  Ms. Strickland said, "I'm not going to move from this spot. This is the Earth and you have no right to tell me which spot to sit or stand."  Employee 1 replied, "[i]t's okay, I'll let the police tell you."

23.    Ms. Strickland continued, "I'm not even human … my spirit is from up there [gesturing skyward].  I'm not sure whether you believe that or not.  I'm going to do what I need to do, what God calls me to do.  You guys go ahead and do what you feel you have to do.  I'm going to do what I must do.  I'm just going to sit here."

24.    Employee 1 then says to another Employee, "[y]ou going to call 9-1-1?  We gotta call them, we got issues, you know?  They're supposed to be over here."

25.    According to Ms. Strickland's spiritual beliefs, the sun is alive.  While praying, she closes her eyes and looks at the sun, focusing upon it and drawing spiritual energy from it.  Referring to Employee 2, who was blocking the sun, Ms. Strickland said, "[c]an you guys get out of the sunlight, please?  I'm praying."  Employee 1 replied "no," and Employee 2 said, "uh-uh.  I can stand right here, just like you can sit right here."  Employee 1 said, "[y]ou know, [Employee 2 has] the right to [stand there blocking the sun]."

26.    Ms. Strickland then invited the agents of Urban Alchemy to pray with her.  Employee 1 replied, "we don't want to pray."  Employee 2 added, "[w]e don't even know who you're praying to."

27.    While the Employees waited for the police to arrive, Employee 1 said, "They want to clean this all up.  **It's all politics involved.  He [_i.e._, Ms. Strickland] didn't even break the law.**"

28.    Employee 1 continued, "Thing is, **he** had feed the birds, scaring people.  **You know, that's how the language is.  He's** out feeding the birds, in the middle here, **talking insanity**, scaring people who walk past."  Neither Ms. Strickland's language nor her conduct was frightening to anyone, nor could any reasonable person be frightened thereby.

29. Employee 1 continued, "**[t]here's politics involved.  They don't want this.  This is all bad for politics, man**."

30. Employee 3 then said, "last chance, **man**.  You want to get up, **man**?" Ms. Strickland responded, "[a]s long as you guys are going to continue to lie, I'm going to stay right here."  Employee 1 replied, **"[o]kay, we lie**.  We show you, I'm [going to] show you how the language is like."  Ms. Strickland responded, "[t]he language is love.  That's the only language you need to know."  Employee 1 replied, "They all say that."  Then, as Defendants John Doe 1 and John Doe 2 (police officers) approached Ms. Strickland and the Employees, Employee 3 said, "[y]ou're going to love *this*."

31. When Defendant John Doe 1 arrived, the following conversation ensued:

| | |
|---|---|
| John Doe 1: | Hey, **sweetie**, how are ya? |
| Ms. Strickland: | I'll be good if these guys could just move out of the sunlight and let me finish my prayer. |
| John Doe 1: | You're just making a prayer? |
| Ms. Strickland: | That's all I'm doing. |
| John Doe 1: | How long is the prayer going to take? |
| Ms. Strickland: | Until sunset. That's all. |
| John Doe 1: | Until sunset? |
| Ms. Strickland: | Yeah. |
| John Doe 1: | That's a long time. |
| Ms. Strickland: | Yeah, I know it is. But that's part of my spiritual beliefs. |
| John Doe 1: | A lot of people use this park to, like, walk. And they've got wheelchairs.  And they got, there are other things. |
| Ms. Strickland: | And I'm not blocking anyone. I'm in the middle of the center of a spiritual nexus right here. |

| | | |
|---|---|---|
| 1 | John Doe 1: | **That's fair. But these guys work here, right?** |
| 2 | Ms. Strickland: | Yeah, but they've been harassing me, and calling me sir. And trying |
| 3 | | to make like I was a criminal. This guy just accused me of being |
| 4 | | insane.  It's on camera right now.  I'm recording all of this. |
| 5 | | |
| 6 | John Doe 1: | Okay. |
| 7 | Ms. Strickland: | I'm not insane. |
| 8 | John Doe 1: | I don't think you're insane. |

32.   Following some additional banter, the conversation continued as follows:

| | | |
|---|---|---|
| John Doe 1: | Do you come out here every day? |
| Ms. Strickland: | Not every day.  This is just, like, you know, in certain places on the earth- |
| John Doe 1: | Sure. |
| Ms. Strickland: | ... there's a spiritual nexus where the energy is different in each spot.  So, I just go there and I pray.  And then I leave.  That's all I do.  And then I rest. |
| John Doe 1: | Now, today, earlier, right?  Do you remember when you went into the water [area]? |
| Ms. Strickland: | Yeah. It was open, so I thought it was open. |
| John Doe 1: | Yeah, it wasn't open. |
| Ms. Strickland: | Well, there was no signs. |
| John Doe 1: | That's okay. I know there's no signs, but that's why they have a fence there. I don't know why it might have been opened when you came through.  It always- |
| Ms. Strickland: | I mean I was seeing people in there before, so I thought- |

9

| | | |
|---|---|---|
| 1 | John Doe 1: | No Worries.  Yeah, yeah.  You thought it was okay. |
| 2 | | Understandable. So, first of all, that already got you in trouble |
| 3 | | today, but the officers advised you on that. Right? |
| 4 | Ms. Strickland: | Yeah. |
| 5 | | |
| 6 | John Doe 1: | Right. And **I don't want to get you in any more trouble. Right?** |
| 7 | Ms. Strickland: | Okay, yeah. |
| 8 | John Doe 1: | Now is there, do you think there's anywhere else in this world that |
| 9 | | maybe you can go to finish this prayer? |
| 10 | Ms. Strickland: | Not right now. No. |
| 11 | John Doe 1: | Okay. |
| 12 | Ms. Strickland: | Not till the sun sets, which is another hour and a half. |
| 13 | John Doe 1: | Another hour and a half. Well, unfortunately that's not going to |
| 14 | | work. |
| 15 | | |
| 16 | Ms. Strickland: | Why? To sit here? |
| 17 | John Doe 1: | Yes. |
| 18 | Ms. Strickland: | Why? |
| 19 | John Doe 1: | Because first you were causing a ruckus in the fountain [area], |
| 20 | | earlier today. |
| 21 | | |
| 22 | Ms. Strickland: | That doesn't have anything to do with what's happening right here. |
| 23 | John Doe 1: | **These guys work here.  And they're asking you to leave.  Which** |
| 24 | | **is you refusing to trespass.  You're-** |
| 25 | Ms. Strickland: | This is actually city property. We own this property. |
| 26 | John Doe 1: | You don't own this. |
| 27 | Ms. Strickland: | Yes, we do. Taxpayers own this. |
| 28 | | |

10

| | | |
|---|---|---|
| 1 | John Doe 1: | Taxpayers. |
| 2 | Ms. Strickland: | Yeah. |
| 3 | John Doe 1: | Taxpayers don't own this.  No, this is run by the city. |
| 4 | Ms. Strickland: | Yeah, this is part of the public.  This is public.  This is public |
| 5 | | access. |
| 6 | | |
| 7 | John Doe 1: | **Yeah, but you can't just build a house here.** |
| 8 | Ms. Strickland: | It's not a house.  I'm meditating.  Just like indigenous people did on |
| 9 | | this spot 300 years ago. |

John Doe 1:      Taxpayers.

Ms. Strickland:  Yeah.

John Doe 1:      Taxpayers don't own this.  No, this is run by the city.

Ms. Strickland:  Yeah, this is part of the public.  This is public.  This is public access.

John Doe 1:      **Yeah, but you can't just build a house here.**

Ms. Strickland:  It's not a house.  I'm meditating.  Just like indigenous people did on this spot 300 years ago.

John Doe 1:      Ma'am, these guys are employed by the city.

Ms. Strickland:  That's wonderful.

John Doe 1:      And they're asking you to leave.

Ms. Strickland:  I'm not going to leave.  You're going to have to arrest me for just sitting on the ground, and praying, in front of the sun, in front of City Hall.  If that's what has to happen.

John Doe 1:      Okay.

Ms. Strickland:  But that's not where, that's not how it needs to go.

Employee:        However way **he** wants to go.

John Doe 1:      No, I don't think **he** needs to go. I think **he** can get up and move along.

Ms. Strickland:  I don't want to move along.  I don't have to move along.  I shouldn't have to move along until the sun is set, until I'm done with my purpose of being here.

John Doe 1:      Okay.  You guys work for the city. Right?

Employee 1:      Yeah.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATION OF CIVIL RIGHTS

| | | |
|---|---|---|
| 1 | John Doe 1: | What is you guy's jurisdiction? |
| 2 | Employee 1: | The plaza. |
| 3 | John Doe 1: | The plaza.  To keep what? |
| 4 | Employee 1: | To keep motion moving and not obstructing. |
| 5 | John Doe 1: | To keep motion moving. |
| 6 | | |
| 7 | Ms. Strickland: | And that's actually a lie.  Right?  Lie on camera. |
| 8 | John Doe 1: | **And do we have any, can you help me out with some sort of a** |
| 9 | | **park code that I can enforce here?** |
| 10 | Ms. Strickland: | No. |
| 11 | Employee 1: | Feeding the birds. |
| 12 | John Doe 1: | She was feeding the birds? |
| 13 | | |
| 14 | Employee 1: | Scaring civilians. |
| 15 | Ms. Strickland: | No, I wasn't scaring anybody. |
| 16 | Employee 1: | **Speaking**, you know, **you saw me calling him insane** because- |
| 17 | Ms. Strickland: | Oh, of course. |
| 18 | Employee 1: | That's about perspective. |
| 19 | Ms. Strickland: | You guys are just making up stories. |
| 20 | | |
| 21 | Employee 1: | That's only about perspective.  **I perceived you**, that's only |
| 22 | | perspective. |
| 23 | Ms. Strickland: | You've been recorded this whole time. I got everything, there's no |
| 24 | | perspective. |
| 25 | Employee 1: | **It's only perspective that a civilian walks by, and gets a little bit** |
| 26 | | **nervous. It's only a perspective.** |
| 27 | | |
| 28 | John Doe 1: | Now we got feeding the birds. |

| | | |
|---|---|---|
| Employee 1: | Feeding the birds.  Yeah, that's it. | |
| John Doe 1: | Entering the fountain [area] illegally. | |
| Ms. Strickland: | That's wonderful.  Come on.  Arrest me for feeding the birds. And let's tell London Breed about it.  Let's do that. | |
| Employee 1: | It's against the law. | |
| John Doe 1: | **Anything else?  There's nothing in regards to**... I know you guy's job is to keep people moving, right?  So, I'm just trying to figure out, is it?  I know it's illegal to sit on the fountains, right? | |
| Ms. Strickland: | Do you realize what happens when you disrupt someone from praying? | |
| John Doe 1: | Ma'am. Ma'am, Ma'am, Ma'am. | |
| Ms. Strickland: | No, I'm just going to leave. Because you guys don't understand what you're doing. | |
| John Doe 1: | **I'm trying to figure it out.** | |
| Employee 2: | What about sitting on something that someone wants to read? | |
| Ms. Strickland: | I'm going to City Hall and I'm going to sit on the steps out there. How about that? Because you guys aren't understanding how spiritual things work. Every time someone disturbs something like this, you ruin the aura in the city. You create negative energy. You, mister liar, you can't tell the truth. | |
| Employee 1: | Okay. | |
| Ms. Strickland: | You have to take a look at your heart real hard, and look at the future. | |

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATION OF CIVIL RIGHTS

Employee 1:      I told you, you fed the birds, you know what I'm saying.

[unintelligible] I said, I said [unintelligible].

Ms. Strickland:    No.  No.  You don't get to talk anymore.  We're done.  Your spirit is bad right now.  You need to check yourself hard, really hard.

33.    Ms. Strickland finally succumbed to the coercive pressure placed upon her by John Doe 1, John Doe 2 and the Employees, and left the scene.

34.    At the time John Doe 1 and the Employees demanded that Ms. Strickland leave United Nations Plaza, none of them had any lawful basis or authority to issue such a "move along" order.

35.    None of John Doe 1, John Doe 2 or the Employees ever intervened to prevent any of the deprivations of Ms. Strickland's rights by any other of them, despite having a reasonable opportunity to do so.

### ***Defendants' Violations Caused Plaintiff to Suffer Injuries and Damages***

36.    As a result of the acts and/or omissions of Defendants, Plaintiff suffered:

a.    Legal and other expenses, in amounts to be determined according to proof, including reasonable attorney's fees and costs of suit in connection with this Action;

b.    Emotional distress including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame, in amounts to be determined according to proof; and

c.    Injury to liberty in amounts to be determined according to proof.

### **FIRST CLAIM**

**(Violation of First Amendment Rights – 42 U.S.C. § 1983)**
**(Against Defendants Does 1-10)**

37.    Plaintiff realleges and incorporates by reference the preceding paragraphs of this

Complaint.

38.     The First Amendment to the United States Constitution reads, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

39.     The Fourteenth Amendment to the United States Constitution makes the First Amendment to the United States Constitution applicable to the Employees and to Defendants Urban Alchemy and Does 1 through 10, inclusive.

40.     The conduct of Does 1 through 10, including Defendants John Doe 1 and John Doe 2, complained of herein constitutes state action.

41.     Does 1 through 10, including Defendants John Doe 1 and John Doe 2, acted under color of law to deprive Plaintiff of her First Amendment right to free exercise of religion and freedom of speech, and to be free of state action motivated by retaliatory animus, by doing the acts complained of herein.

42.     Does 1 through 10, including Defendants John Doe 1 and John Doe 2, acted maliciously, intentionally, oppressively, willfully, and in conscious disregard of Plaintiff's rights.  Plaintiff is entitled to exemplary or punitive damages according to proof.

43.     As a proximate result of the conduct of Does 1 through 10, Plaintiff suffered injuries and damages as set forth herein.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**SECOND CLAIM**

**(Violation of 14th Amendment Rights – 42 U.S.C. § 1983)**

**(Against Defendants Does 1 to 10)**

44.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint.

45.     The freedom to loiter for innocent purposes is part of the liberty guaranteed by the due process clause of the 14th Amendment.  *City of Chicago v. Morales* (1999) 527 U.S. 41, 53 (plurality opinion).

46.     Does 1 through 10, including Defendants John Doe 1 and John Doe 2, acted under color of law to deprive Plaintiff, without due process of law, of her right to loiter in United Nations Plaza for innocent purposes, by arbitrarily ordering her to leave the Plaza absent any lawful basis for such an order, failing to intervene to challenge the order and/or doing the other acts complained of herein.

47.     Does 1 through 10, including Defendants John Doe 1 and John Doe 2, acted maliciously, intentionally, oppressively, willfully, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to exemplary or punitive damages according to proof.

48.     As a proximate result of the conduct of Does 1 through 10, Plaintiff suffered injuries and damages as set forth herein.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## THIRD CLAIM

### (Violation of Civil Rights – 42 U.S.C. § 1983 – *Monell*)

### (Against Defendants Urban Alchemy, Hunters Point Family, City)

49.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint.

50.     Defendant City may be sued for its own misconduct under Section 1983.  *See Monell v. Dept of Soc. Servs*., 436 U.S. 658, 701 (1978) (holding that municipal corporations may be named in a Section 1983 lawsuit).  *Monell* also applies to claims against Defendants Urban Alchemy and Hunters Point Family.  *See Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1139 (9th Cir. 2012) ("[T]he requirements of *Monell* do apply to suits against private entities under §1983. . . . [W]e see no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law [internal citations omitted].")

51.     The freedom to loiter for innocent purposes is part of the liberty guaranteed by the due process clause of the 14th Amendment.  *City of Chicago v. Morales* (1999) 527 U.S. at 53 (plurality opinion).  Defendants Urban Alchemy, Hunters Point Family and City maintain, and at all times relevant hereto have maintained, a policy and/or practice of "keep[ing] people moving" in designated locations within the City of San Francisco by deploying (and/or entering into contracts in furtherance of deploying)

reformed long-term felons to issue arbitrary 'move-along' orders to members of the public, without any lawful basis, and regardless of whether the individuals ordered to "move along" are actively engaged in the exercise of First Amendment rights.

52.     This policy and/or practice is evidenced by multiple verbal admissions made by various front-line employees of Urban Alchemy and/or Hunters Point Family, including several captured on video.

53.     For example, as detailed above (and documented in a video posted at https://www.youtube.com/watch?v=gK48gcscTng ), Employee 1 told Plaintiff that "[a]ll we ask you to do is go pray on the outside and not in the middle of the center of the Civic Center." When she objected, he replied, "[i]t's okay, I'll let the police tell you." Employee 1 continued, "**They want to clean this all up.  It's all politics involved.  [Plaintiff] didn't even break the law... [t]here's politics involved. They [*i.e.*, the policymakers] don't want this.  This is all bad for politics, man.**" Employee 1 admits that his job is to "**keep motion moving and not obstructing**." Even the professionally-trained SFPD participates in the policy or practice, with Defendant John Doe 1 telling Plaintiff, "[t]hese guys work here.  And they're asking you to leave.  Which is you refusing to trespass [sic]."

54.     In another incident (*see* https://www.youtube.com/watch?v=dMWi6t8U62s&t=97s ), a young man unknown to Plaintiff went on camera and said "[s]o I'm gonna make a prediction right now. I'm gonna sit down on a public sidewalk and write in my journal. And I'm about to be harassed by Urban Alchemy."  That is exactly what happened next.  An Urban Alchemy and/or Hunters Point Family employee approached the man and said "**you can't, they [*i.e.*, the policymakers] don't want nobody sitting down, loitering, none of that bullshit**."  When the man replied that all he is doing is writing in his journal, the employee said "**they [*i.e.*, the policymakers] don't want nobody hanging out, bro**."  The man asked, "is this not a public sidewalk?," to which the employee replied, "yeah, but this street right here, **they [*i.e.*, the policymakers]  don't want nobody standing around... we're out here just trying to clean it up**."  The man asked whether writing in his journal there was illegal, to which the employee said, "**it's not illegal to be here, but we're hired here to fucking keep people moving**."  A supervisor of Urban Alchemy approaches, and the man asks, "am I not allowed to be here?".  The

supervisor replies, "yeah, **we've actually got to keep it clear** [unintelligible]."  The man asks the supervisor whether it's illegal to be there, which the supervisor does not answer, instead replying "**they [*i.e.*, the policymakers] put us back here because there's a lot of activity that goes on back here, so they [*i.e.*, the policymakers] want to clear it** to [unintelligible], **that's all we do**."

55.     In an encounter with another man, an Urban Alchemy employee "pushed him to the ground and kicked him after [he] didn't move when told he couldn't stay on the sidewalk."  *See* Moench, Mallory, *Mayor Breed poured millions into Tenderloin community ambassadors, added police months before crackdown. Has it helped?*, SAN FRANCISCO CHRONICLE, December 30, 2021.  The man has been told to "move along" in 90% of his encounters with Urban Alchemy.  *See id.*

56.     The policy or practice is also evidenced by the vague contractual standards governing the programs in which Urban Alchemy and/or Hunters Point Family participate.  In response to a Public Records Act Request by Plaintiff's attorney on July 6, 2021 (Request #21-3422), Defendant City produced a "Grant Agreement between City and County of San Francisco and San Francisco Parks Alliance," dated as of July 1, 2019 (several months after the incident complained of herein), and an amendment thereto dated as of January 1, 2020 (collectively, the "Post-Incident Agreement").  Urban Alchemy is listed in the Post-Incident Agreement as the sole permitted subgrantee thereunder.  The Post-Incident Agreement was executed by Mohammed Nuru, the disgraced former Director of San Francisco Public Works who pleaded guilty to honest services wire fraud in December 2021.  The Post-Incident Agreement contemplates that San Francisco Parks Alliance would perform, or delegate to Urban Alchemy to perform, services within the Plaza and certain other locations including "monitoring," including "encouraging the community to properly use destinations," as well as "ambassador" services, including "reporting of improper use and dangerous or antisocial behavior per trainings to be developed by Public Works" and "informing individuals of the meaning and intent of the destination."  Having received no training-related materials in response to relevant requests made under the Public Records Act, Plaintiff alleges that no such trainings have been developed by Defendant City.

57.     On May 6, 2022, Urban Alchemy, through its counsel, produced to Plaintiff a "Grant Agreement between City and County of San Francisco and Hunters Point Family," dated as of January 1,

2019 (several months before the incident complained of herein) (hereinafter, the "Pre-Incident Agreement"). In the Pre-Incident Agreement, Urban Alchemy is listed as the sole permitted subgrantee thereunder.

58.     The Pre-Incident Agreement (in effect on the date of the incident complained of herein) contemplates that Hunters Point Family would perform, or delegate to Urban Alchemy to perform, services within the Plaza and certain other locations including "monitoring," including "encouraging the community to properly use destinations," as well as "ambassador" services, including "reporting of improper use and dangerous or antisocial behavior per trainings to be developed by Public Works" and "informing individuals of the meaning and intent of the destination." Having received no training-related materials in response to relevant requests made under the Public Records Act, Plaintiff alleges that no such trainings have been developed by Defendant City.

59.     Each of the enactment, existence, implementation and execution of said policy and/or practice, including City's, Hunters Point Family's and Urban Alchemy's failure to adequately train the Urban Alchemy and Hunters Point Family employees, and their failure to sufficiently supervise them, was a moving force behind the deprivations of Plaintiff's Fourteenth Amendment right to loiter at United Nations Plaza for innocent purposes and her First Amendment rights of freedom of speech and free exercise of religion.

60.     Each of the enactment, existence, implementation and execution of said policy and/or practice, including City's, Hunters Point Family'sUrban Alchemy's failure to adequately train the Urban Alchemy and/or Hunters Point Family employees, and their failure to sufficiently supervise them, amounted to deliberate indifference of Plaintiff's constitutional rights.

61.     As a proximate result of said policy and/or practice and Urban Alchemy's, Hunters Point Family's and City's conduct in enacting and maintaining existence, implementation and execution thereof, Plaintiff suffered injuries and damages as herein set forth.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## **PRAYER**

WHEREFORE, Plaintiff prays for relief as follows:

1.      General damages according to proof at trial;

2.      Special damages according to proof at trial;

3.      Punitive damages according to proof at trial;

4.      Reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and other applicable law;

5.      Costs of suit incurred herein;

6.      An injunction prohibiting Defendants and any of their respective officers, employees, supervisees and agents from interfering with the peaceful exercise of rights guaranteed under the First Amendment, from issuing "move along" orders without lawful basis, and from operating or participating in any programs foreseeably likely to result in future violations of First Amendment rights (*e.g.*, due to inadequate training and supervision of front-line personnel);

7.      Such other and further relief as the Court may deem just and proper.

Dated:  June __, 2022

/s/ Donald Cloyce Wagda
Donald Cloyce Wagda
*Attorney to Plaintiff*


## JURY DEMAND

Plaintiff respectfully requests a jury trial in this action.


Dated:  June __, 2022

/s/ Donald Cloyce Wagda
Donald Cloyce Wagda
*Attorney to Plaintiff*

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATION OF CIVIL RIGHTS